KNIGHT *v.* STATE.

Oct. 27, 1952

No. 38423          5 Adv. S. 24          60 So. 2d 638

*E. L. Dent, W. W. Dent* and *Rex McRaney,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

ALEXANDER, J.

Appellant appeals from a verdict and judgment of manslaughter. He was employed in a small cafe owned by Monroe Breland, whose sister, Essie May, was similarly employed. The deceased, L. B. Carter, who had resided in Jackson came to the community known as Friendship for the purpose of inducing Essie May either to come to Jackson with him or to return to her people. The record justifies the conclusion that his mission was fortified by a determination that found expression in belligerence and was accompanied with more or less vague threats. He and Essie May had been living together in Jackson though she testified that they were not married.

(Hn 1) On the morning of the fatal encounter Carter came to the cafe after having told some of the witnesses that he had come to Friendship ''to kill or get killed.'' He also stated to some others that he had come after his wife and that he had ''come after a woman.'' He was variously

described as "mad," "staggering" and "drunk," though the defendant testified that, at the time he shot deceased, he appeared mad rather than drunk. During the morning visit he made inquiry of Essie May whether she and the defendant were married and received a negative reply. He voiced some threats against her, saying with curses that "Me or you one is going to die or somebody." This testimony was properly excluded as not having been directed to or aimed at the defendant. Young v. State, 150 Miss. 787, 117 So. 119.

(Hn 2) One Lucy Graves testified that at 10 a. m. she encountered the deceased who said "I am up here to get a woman" and "I came up here to kill or get killed." The objection to this statement, based upon the ground that the witness did not properly identify the speaker, was sustained. However, he was one of three persons of the same name, all related, and she knew the other two. As against the objection as made, the testimony was admissible for its circumstantial value. However, several witnesses testified to the same effect.

We need not venture deeply into a discussion of the several acts and words indicating a general mental frame of hostility and angry purpose, since the defense interposed is self-defense. The defendant testified that later, when he first saw the deceased, the latter was near the counter leaning on one elbow looking through a sort of half-door or window into the kitchen where defendant was seated. Deceased started through this passageway toward the defendant who reached up on a nearby shelf and procured a pistol with which he shot deceased through the forehead.

Other details remaining to be mentioned include testimony of the defendant that he cried to deceased to "Go back. Don't come on me." He further testified that deceased then said, with curses, "I am going to kill you if it's the last thing I do." He sought to justify the shoot-

ing by a contention that the deceased entered the kitchen armed with a pistol.

(Hn 3) The so-called threats previously made were not communicated to the defendant and their force is absorbed and in a practical sense is eclipsed by 'the immediate threat by which the defendant sought to justify his act. References as to the status of deceased as being married to Essie May were properly excluded. The acts from which defendant was enabled to and did interpret deceased's purpose center about the final encounter. Even if the broad threats elsewhere expressed should be held to be competent their relevancy would have been restricted to the issue as to which was the aggressor. There is no substantial conflict as to the fact that deceased undertook to enter the kitchen where the defendant was, some witnesses stating that he "dashed in."

Had there been a conviction of murder these matters would cause difficulty. However, the jury were given instructions upon manslaughter and were free to decide whether the act of deceased reasonably presaged death or great bodily harm. In weighing this testimony the fact that no weapon was found upon or near the body of deceased is in point in adjudging whether the act of defendant was apparently necessary and whether he used more force than was reasonably required.

The following instruction was refused to the defendant:

"The fact that the officers did not find a weapon upon or near the body of the deceased during their investigation does not establish the guilt of the defendant. And in order to establish that the defendant acted in self-defense at the time of firing the fatal shot, it is not essential that the defendant show that the deceased actually had a deadly weapon; but in cases of this character the law authorizes action on reasonable appearances; and if the conduct of the deceased was such as to induce a reasonable belief that the deceased had a deadly weapon,

then the defendant was justified in assuming that the deceased had one.''

Appellant's contention is that it follows expressions found in this Court's opinion in Scott v. State, 203 Miss. 349, 34 So. 2d 718. **(Hn 4)** We must again warn against quoting in instructions the reasoning or discussive portions of judicial opinions. See Gulf M. & N. R. Co. v. Weldy, 193 Miss. 59, 8 So. 2d 249. **(Hn 5)** The error of the instruction is found in its comment upon the testimony and in its aspect as argumentative. It was properly refused.

The following charge was refused: ''That as a matter of law, you shall not in your deliberation consider that the witness, Etha Mae Breland, and the deceased, L. B. Carter, were husband and wife.'' A similar charge was, however, granted. **(Hn 6)** Other instructions injecting the question as to the marital status of Essie May Breland were properly refused as raising false and irrelevant issues.

It is lastly contended that the trial court erred in refusing an instruction limiting the verdict, in case guilt should be adjudged, to manslaughter. The authorities cited to support this contention are all cases wherein the accused was found guilty of murder. We have held that one convicted of manslaughter may not complain of an instruction authorizing a conviction of murder. Crockerham v. State, 202 Miss. 25, 30 So. 2d 417. By the same reasoning **(Hn 7)** an accused may not complain of the refusal of an instruction limiting the verdict to manslaughter when the jury have done that which such instruction would have required.

**(Hn 8)** We revert for a moment to the testimony wherein it was shown that immediately after the deceased was shot in the presence of Essie May, she cried to the defendant, ''I told you not to do that. Now you have got yourself in a world of trouble.'' This statement was admissible as part of the res gestae, and is to be interpreted in the light of the statement by defendant to the cafe owner Breland,

"Monroe, you had better tell this man something before I kill him," and his statement made in reply to a question put to him later as to why he killed deceased, "I don't know."

It will therefore be seen that the jury may have been warranted in finding the accused guilty of murder. We need not so decide this, however, since a verdict of manslaughter was justified under all the testimony.

(Hn 9) Monroe Breland, who did not know the deceased, searched his clothing for means of identification. In the right hip pocket he found a pocketbook with the name of deceased. Admission of this testimony was harmless as against the contention that Breland "stole" the money therein. The search served the further purpose of disclosing that deceased was not armed.

We find no reversible error in the record.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle,* and *Holmes, JJ.,* concur.