**Chesley A. HENDERSON, Plaintiff in Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

May 4, 1976.

Certiorari Denied by Supreme Court July 26, 1976.

James L. Hicks, Memphis, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Robert Grunow, Asst. Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Richard S. McNeese, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

DAUGHTREY, Judge.

## OPINION

The defendant, Chesley A. Henderson was arrested on July of 1974 on a charge of driving while intoxicated (DWI).

Trial was set in the City Court of Memphis for January 16, 1975. On that date, after the defendant appeared and pleaded not guilty, the City Attorney requested and was granted dismissal of the charge without prejudice. Thereafter, the Shelby County Grand Jury indicted the defendant for DWI and in a separate indictment, of a

prior conviction of the same offense. Trial on these two indictments was scheduled in the Criminal Court of Shelby County. The defendant entered a plea in abatement and moved for dismissal of the charges pending in criminal court on the ground that the City Court of Memphis was the court of original jurisdiction and these charges could only be brought against him in that court. The motion was denied; the defendant was convicted of both DWI and second offense DWI and was sentenced to six months in the Shelby County penal farm and assessed a $500.00 fine. He appeals from the conviction asserting seven assignments of error:

1. The Criminal Court of Shelby County lacked jurisdiction to determine this case.

2. The trial court erred in failing to charge the jury upon request that the presumption of innocence goes to the good character of the defendant.

3. The trial court erred in reading to the jury as part of its charge portions of the Supreme Court opinion in *Crosswy v. State*, 157 Tenn. 363, 8 S.W.2d 486 (1928).

4. The trial court erred in instructing the jury, after the evidence was in and prior to dismissing it overnight, that jury members should "blot the case out of their minds entirely."

5. The evidence preponderates against the verdict and, being circumstantial, fails to exclude every other reasonable hypothesis than defendant's guilt.

6. The penalty assessed constitutes cruel and unusual punishment and evidences bias, caprice, and passion on the part of the jury.

7. The system of plea bargaining in DWI cases in Shelby County establishes "vindictiveness" on the part of the prosecutor toward defendants who maintain their innocence and choose to go to trial, in violation of the due process and equal protection provision of the Tennessee and United States constitutions.

We find no merit in defendant's assignments of error and affirm the verdict of the trial court.

A careful review of the record reveals that the following evidence was presented at trial. On the day in question two Memphis city policemen were assigned to direct traffic on Milton Avenue near the Stadium because of the rock concert being held that afternoon. One officer testified that the first time he saw the defendant was about 3:00 P.M. when the defendant pulled out of the gate of the Binswanger Glass Company in a small company truck, made a sharp right turn and pulled away accelerating rapidly, "burning his tires." The defendant was next seen by this officer about 20 minutes later when he had returned to the plant, stopped his truck at the edge of the roadway and was walking across the street to open the gate. This officer stated that at this time the defendant was "staggering." Both officers then went up to the truck and when defendant came back across the street they approached him. The first officer described him as having a strong odor of intoxicant, with very slurred and slow speech and expressed his opinion, based upon the large number of intoxicated people he had observed in his years as an officer, that the defendant was intoxicated.

The testimony of the second officer was the same in all material aspects except that he stated that he had first seen the defendant about 4:00 P.M. when he left the parking lot and he had actually observed the defendant drive down the street on his return to the plant. The officers admitted that they had not observed anything out of the ordinary in the defendant's driving other than his rapid acceleration on leaving the plant. No tests of any kind for intoxication were administered by these officers.

Officer J. L. O'Daniels of the Shelby County Sheriff's Department, Metro DWI Squad, arrived at 4:41 P.M. to pick up the defendant. He testified that when he saw the defendant walking toward his van he was staggering and walking with the assistance of the officers. This officer stated that the defendant's speech was slurred, he smelled of intoxicants, and he exhibited "all the classic signs of being under an intoxicant."

The defendant, an employee of Binswanger Glass Company, testified that he went

to work on Saturday, July 27, 1974 at 8:00 A.M. He worked from 8:00 A.M. to 12:00 P.M. on repairing a truck. At noon he and a co-worker left the plant and walked to a nearby store where each purchased one can of beer and the co-worker purchased a sandwich. They brought their purchases back to the plant where they were consumed. In the afternoon the defendant and his co-worker worked on adjacent vehicles in the yard of the plant. At 3:00 P.M., their work completed, the defendant left to test drive a vehicle and his co-worker left in his own car. This testimony was corroborated by the testimony of the co-worker.

The defendant further testified that he drove three blocks to his home where he had one beer and a sandwich and then drove back to the plant. On the way back to the plant, he stopped and bought one can of beer from which he had taken one swallow prior to reaching the plant gate. On reaching the plant gate the defendant discovered that a parked vehicle had blocked his ingress. He left his truck and walked to the vehicle to see if it was unlocked and could be moved. Discovering that it was locked, the defendant called to one of the police officers directing traffic and asked if he could help to get the vehicle out of the way. When the officers came over to where his truck was parked he was placed under arrest.

## I. JURISDICTION

In his first assignment of error the defendant argues that once the City Court of Memphis had gained jurisdiction over these charges any further proceedings could be had only in that court. The State counters that despite the language of Chapter 288 of the Private Acts of 1972 giving the Memphis City Court concurrent jurisdiction with the criminal and general sessions courts of Shelby County in misdemeanor cases arising under state statutes, the Memphis City Court was not in fact, in this case, exercising jurisdiction concurrent with that of the criminal court.

■ The problem with the defendant's argument is that while the city court had

jurisdiction to proceed under the warrant, in order for the city court to have had jurisdiction to *try* this defendant, the defendant would have had to have executed a written waiver of his right to be charged only by indictment or presentment and either waived his right to a jury trial or demanded a trial by jury. *State v. Lusky*, 196 Tenn. 326, 267 S.W.2d 106 (1954); Tenn. Priv. Acts, 1972, ch. 288. If after pleading not guilty, the defendant had refused to sign a waiver and thereby elected only to be charged by presentment or indictment, the city court would have had no jurisdiction to put him to trial, and its only recourse would have been to bind him over to the grand jury.

■ The technical record which we have before us contains no indication of what, if anything, transpired in the City Court of Memphis. Waiver may not be presumed from a silent record.

We are therefore unable to find that the City Court of Memphis ever had jurisdiction to try this defendant and hold that jurisdiction was properly in the Criminal Court of Shelby County. The assignment is overruled.

## II. JURY INSTRUCTIONS

■ Defense counsel properly submitted to the court a request that the judge charge:

The court charges the jury, that one accused of a crime comes into court presumed to be innocent, and such presumption likewise goes to the defendant's good character, if that question is not put in issue.

The defendant had offered no evidence as to his character, either for truth and veracity or sobriety.

The request was denied by the court and the defendant assigns error. We have carefully reviewed the authorities cited and find persuasive the reasoning in *Durham v. State*, 128 Tenn. 636, 163 S.W. 447 (1913), where the court held that "(t)he presumption of a good character may not be a basis of inference for the purpose of adding

weight to the presumption of innocence or its logical resultant," *i. e.,* reasonable doubt. *Id.* at 642, 163 S.W. at 449. In support of its conclusion the *Durham* court quoted from *Addison v. People,* 193 Ill. 405, 419, 62 N.E. 235, 239 (1901) as follows:

Defendant did not choose to put his reputation in issue or prove that it was good, but sought by the instruction all the benefit of an affirmative finding of such fact without proof or an opportunity to combat the claim or prove the negative. If the instruction were the law, a defendant need never prove good reputation, but could take the benefit of the proof which . . . he could not make.

Accordingly, we find that the trial court committed no error in denying the request and assignment number two is overruled.

 The defendant further assigns as error that portion of the charge given to the jury which states:

If one will use an intoxicant, he must remember that organized society speaking through the legislative department of this State has inhibited him from driving while under the influence of intoxicating liquor any automobile, motorcar, taxicab, or motorcycle in the State of Tennessee and especially prohibits the driving of an automobile by any person on the public highways of Tennessee while such person is under the influence of an intoxicant. Such person has no right to speculate as to the extent of the potency of the intoxicant he has taken or as to his powers of resistance. If he would avoid the penalty which the law imposes for violation of its command, common prudence would suggest that he refrain from experimenting as to his ability to overcome the influence of the intoxicant he has used. The statute must be obeyed.

This language is a direct quotation from the text of the opinion in *Crosswy v. State,* 157 Tenn. 363, 371, 8 S.W.2d 486 (1928).

The defendant asserts that this instruction to the jury (a) constitutes a comment

by the judge on the evidence and a "summing up," both of which are prohibited by the Tennessee constitution, (b) is contrary to the law and charge that every witness is presumed to be telling the truth, (c) applies a stricter standard of credibility to a defendant in a DWI case than in other cases and in effect negates the presumption of innocence, (d) allows the court to single out and give undue influence to certain portions of the case and constitutes improper comment to the jury and how they should weigh certain evidence, and (e) virtually charges the jury that defendant is guilty if he has had even one drink.

In response the State contends that the thrust of the charge is merely to advise the jury that they should ignore certain legal irrelevancies, *i. e.,* speculation by the defendant as to the potency of the consumed intoxicant or the extent of his own capacity for consumption. The State argues that the charge as given does not prevent the defendant from testifying in his own behalf on the question of his guilt or innocence, as for example, by giving his opinion as to his relative sobriety. Technically this interpretation may be correct, but the difficulty is that the charge in its overall effect is not completely clear. It thus presents the possibility of misunderstanding by the jury.

In his brief on this point, the defendant complains generally of the practice of reading portions of opinions from other cases as part of the instruction to the jury. There is apparently no Tennessee law on this issue, and the cases in other jurisdictions which discuss this practice are not numerous. The consensus seems to be that while it is within the trial judge's discretion to read a legally correct statement from another court opinion, the better practice is to use instructions specifically designed and developed for that purpose.[1] As the Colorado Supreme Court put it:

The practice of giving excerpts from the court opinions as instructions to juries

---

1. The American Bar Association's Standards Relating to Trial By Jury, Section 4.6(a), call for the use of "accurate, impartial, and understandable pattern jury instructions" as a beginning point in the development of the charge in any given individual criminal case. In the

frequently gives rise to difficulties. Opinions are written with the facts and issues of the particular case under consideration in mind. The language used is ordinarily with reference to and should be construed in the light of the issues and the facts of the particular case which are then already determined. Inaccuracy or lack of clarity in a statement of the law applied to determined facts and to past events is subject to explanation and clarification. In an opinion, the matter of primary importance is that the court shall have had in mind, considered, and applied the correct rule of law. That it shall be stated clearly and accurately in the opinion is desirable, but since future action is not dependent on the accuracy of the statement it is of secondary importance. Instructions to juries, on the contrary, are drawn with the object of stating a general rule of law to guide them in the process of arriving at the true facts from the evidence in the particular case on trial, which facts, when the instructions are given, are then undetermined. Bearing in mind these distinctions, *it is apparent that language used in an opinion pertinent to the issues and the determined facts in that case may be a proper expression of the law as related to those facts and issues, and pertinent to a decision of the case, and yet may not be sufficiently general, clear, or accurate to serve as a satisfactory or full instruction to a jury.* The practice of quoting a portion of a judicial opinion in one case as a general statement of the law to guide the jury in determining the facts in another, if indulged in at all, should be with care and discrimination with the object sought to be attained by the instruction clearly in mind. *Cohen v. People,* 106 Colo. 245, 103 P.2d 479, 479–80 (1940) (emphasis supplied).

And in *Knight v. State,* 215 Miss. 251, 60 So.2d 638, 640 (1952) the Mississippi Supreme Court said:

> We must again warn against quoting in instructions the reasoning or discussive portions of judicial opinion. The error of (this) instruction is found in its comment upon the testimony and in its aspect as argumentative.[2]

While we do not think the quotation at issue here can be labelled "incorrect" as to its content, we question the propriety of reading it to the jury. A close review of the *Crosswy* opinion indicates that the language here quoted from it is dictum and, taken in context, was merely supportive of the *Crosswy's* court's conclusion that the evidence as a whole did not preponderate against the jury's verdict of guilt.[3] The

---

Commentary to this section, the Committee points out that "the language of decisions and statutes may represent correct and unimpeachable statements of the law, but the phraseology may be far removed from the juror's comprehension," citing Parnell, *Uniform Jury Instructions,* 32 Wis.B.Bull. 58 (1959). A set of pattern instructions for use in Tennessee criminal cases is currently being drafted under the auspices of the Tennessee Judicial Conference Committee on Pattern Jury Instructions, chaired by Chancellor John D. Templeton. The criminal courts subcommittee, headed by Judge Joe D. Duncan of this Court, is expected to have a final draft ready for publication by mid-1977.

**2.** The instruction in *Knight* had been requested by the defendant and refused by the trial judge. The court held that the trial judge's refusal was not error. 60 So.2d at 640.

**3.** The passage from *Crosswy* which is here at issue reads in its entirety as follows:

> If one will use an intoxicant, he must remember that organized society, speaking through the legislative department of this State, has inhibited him from driving while under the influence of intoxicating liquor any automobile, motorcar, taxicab, or motorcycle in the State of Tennessee, and especially prohibits the driving of an automobile by any person on the public highways of Tennessee, while such driver is under the influence of an intoxicant. Such person has no right to speculate as to the extent of the potency of the intoxicant he has taken, or as to his powers of resistance. If he would avoid the penalty, which the law imposes for violation of its command, common prudence would suggest that he refrain from experimenting as to his ability to overcome the influence of the intoxicant he has used. The statute must be obeyed; and this Court will not, after a fair and impartial trial in the lower Court, permit a defendant found guilty of its violation, to escape punishment, because of a diversity of opinion entertained by those who were called

statement may not be wrong when viewed as a principle of appellate review, but it is not altogether appropriate as a legal standard by which a jury should decide the defendant's guilt or innocence. And as a blanket instruction,[4] we find it even less appealing. While the defendant in the case before us did testify that in his opinion he was not intoxicated on the afternoon in question, he offered no opinion or "speculation" as to the relative toxicity of the alcohol consumed nor as to his own powers of resistance to the amount of alcohol which he admitted having consumed on this date. Thus the charge is subject to the additional criticism that it was not supported by the facts in this record.

However, although we feel the instruction was probably unwise and should be abandoned, we think any error was harmless under T.C.A. § 27–117 because of the overwhelming evidence of the defendant's guilt.

■ The defendant's fourth assignment of error is unsupported by citation to authority and is, we feel, without merit. The defendant has totally failed to apprise us of what, if any, prejudice resulted or might have resulted from the court's suggestion to the jury as they were about to be discharged for the day that they "[w]ipe this (case) from you mind tonight . . ." and return in the morning to receive the court's charge. We therefore overrule the assignments of error based on the court's instructions to the jury.

### III. THE EVIDENCE

■ With regard to the assignment asserting evidentiary insufficiency, a guilty verdict by the jury, approved by the judge accredits the testimony of the State's witnesses and resolves all conflicts in testimony in favor of the theory of the State. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973); *Hawkins v. State,* 527 S.W.2d 157 (Tenn.Cr. App.1975). On appeal the defendant has the burden of showing that the evidence preponderates in favor of his innocence. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963). A review of the evidence set out above convinces us that he has failed to sustain this burden. And contrary to the position of defense counsel, this is not a circumstantial evidence case. The assignment is overruled.

### IV. THE SENTENCE

■ As to assignment of error number six, we are at a loss to explain the frequency with which this Court is asked to find that sentences which are well within the limits prescribed by statute for the offense charged constitute cruel and unusual punishment or evidence bias, caprice, and passion on the part of the jury. Absent a more substantial allegation, the law in the state of Tennessee is clearly to the contrary. *Akers v. U. S.,* 280 F.2d 198 (6th Cir.) *cert. denied,* 364 U.S. 924, 81 S.Ct. 289, 5 L.Ed.2d 262 (1960); *Howard v. State,* 506 S.W.2d 951 (Tenn.Cr.App.1973); *French v. State,* 489 S.W.2d 57 (Tenn.Cr.App.1972); *Bailey v. State,* 479 S.W.2d 829 (Tenn.Cr.App. 1972); *Yearwood v. State,* 2 Tenn.Cr.App. 552, 455 S.W.2d 612 (1970). The assignment is overruled.

■ The defendant's final assignment of error asserts that it is the practice of members of the staff of the Shelby County Prosecutor's office to offer substantially

---

to testify as to the extent of the influence of the intoxicant used by defendant. Nor will this Court when a defendant confesses that he has been drinking bootleg whiskey while driving an automobile over the public highways of Tennessee, be moved to speculate as to how far the whiskey so consumed has operated to deprive such person of his sense of discretion. To say the least of it, the opinion of such person, as to whether he was or was not drunk, will not be by this Court held to afford evidence sufficient to overturn

the verdict of the jury that has been approved by the trial Judge, even though supported by similar opinions expressed by other witnesses examined.

It is apparent that the portion of *Crosswy* included in the charge is thus taken out of context when invoked in the trial court.

4. In the bill of exceptions on the motion for a new trial, the court indicates that the charge has been widely used in Memphis for many years.

lower than maximum jail sentences and fines to DWI defendants as an incentive to a guilty plea and, conversely, to "penalize" those defendants who maintain their innocence and elect to go to trial by requesting that the jury assess the maximum penalty allowed by law. The defendant claims that this practice evidences a pattern of "invidious", "insidious" "vindictiveness" on the part of the prosecutor in violation of his due process and equal protection rights under the United States and Tennessee constitutions.

First, we think that the evidence adduced by the defendant on the hearing for a motion for a new trial falls far short of establishing such a pattern or practice. Second, the United States Supreme Court in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) has stated that:

> . . . we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the state and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.

We find no merit in this assignment and it is overruled.

The judgment of the trial court is affirmed.

WALKER, P. J., and GALBREATH, J., concur.