SMITH, Presiding Justice, for the Court:
Archie Crump, Jr. was charged by indictment with the crime of murder and was tried on that charge in the Circuit Court of Monroe County. The jury returned a verdict finding Crump guilty of manslaughter and he was sentenced to 20 years imprisonment with 5 years suspended “for good behavior.”
There is very little material dispute in the evidence.
The homicide out of which the prosecution and conviction arose occurred under the following circumstances. On the fatal day, one Sarter, stopped at Crump’s home and a conversation ensued between him and Crump, in the course of which, according to Crump, Sarter remarked that he was tired of people “picking on him and he would get somebody the next time it happened, even if it was Crump.”
Later in the day, Crump and Sarter met again at the home of one Jones and a¡n argument ensued between them. Crump left, telling Sarter not to come by his house. Some time later Sarter left to return to his own home. He began walking in an easterly direction, toward his own home, which route would take him directly in front of Crump’s home.
According to Crump, he was at home when he heard Sarter cursing loudly. At this, Crump said, he got scared and went inside and got his shotgun. He then returned to his front porch with the weapon.
Crump testified that Sarter entered his yard and approached his house and Crump told him not to come into the house. Again according to Crump, Sarter mumbled something in reply, whereupon Crump fired at him once with his 12 gauge shotgun, the charge striking Sarter in the hip. Sarter “grabbed himself” and headed back toward the street. Crump reloaded his single barrel gun, stepped off his front porch, moved toward Sarter and fired again, aiming at Sarter’s shoulders. Crump contended that he fired the second shot because he thought he had missed Sarter the first time, adding that he thought Sarter was trying to get a gun. As a matter of fact, Sarter had no weapon.
The second charge struck Sarter in the back of the neck and he fell in the street directly in front of Crump’s house. Cross-examined as to why he shot Sarter, Crump said “I actually, I had no special reason. I was just shooting but I was scared.”
Riley Jones testified about the argument between Crump and Sarter which had taken place at his home, saying that Crump had told Sarter “Don’t come by my house.” Jones also testified that Sarter left and started walking home about an hour and a half after Crump had left. Jones heard a shot and saw Sarter fall in the street. Because of a large tree growing between the Jones’ house and Crump’s house he was unable to see who had fired the shot.
*227 David Jenkins testified that he had been at Riley Jones’ home on the night in question and had observed Sarter walking east down the street. He heard a shot and saw Sarter fall. Sarter called for help and Jenkins ran over to him but was told by Crump “Put him down or you are going to get the same thing.”
Police Officer Walker testified that when he arrived at Crump’s home shortly after the shooting he observed Sarter’s body lying in the street. As he examined the body Crump told him “I’ve shot him. He’s dead. There’s nothing you can do.”
The medical testimony given by the doctor who examined the body was to the effect that one wound was in Sarter’s right hip and although it was a rather large wound in dimension it was not the immediate cause of death. The second wound, directly in the back of Sarter’s neck, according to the doctor’s testimony, had caused Sarter’s death. According to the doctor, the shot in the neck had been fired at a much closer range than that in the hip.
Appellant assigns for reversal the action of the trial court in refusing to direct the jury to return a verdict of not guilty, and also he asserts that the verdict of guilty was against the overwhelming weight of the evidence. Both of these contentions obviously are without merit. The evidence in the case would have justified Crump’s conviction of murder and certainly was sufficient to support his conviction of manslaughter.
It is next urged that the trial court erred in granting jury instruction S-l which submitted to the jury the question of whether Crump had been guilty of murder in slaying Sarter. This instruction was proper under the indictment and, moreover, this Court has held in Hailes v. State, 315 So.2d 917 (Miss.1975) that one convicted of manslaughter under a murder indictment cannot complain of the giving of a murder instruction.
It is next asserted by appellant that the trial court was in error in refusing to grant instruction D-6. The instruction is obviously erroneous in several particulars and contains, among other things, the erroneous statement of the law of self-defense that “It is sufficient (to establish that the homicide was committed in self-defense) if the defendant shows that the conduct of the deceased, Ovie B. Sarter, was such as to induce a reasonable belief of apparent danger to the defendant, Archie Crump, Jr.” A somewhat similar instruction was condemned in Knight v. State, 215 Miss. 251, 60 So.2d 638 (1952). It is sufficient to point out that the instruction omits the requirement that there must have been reasonable grounds for Crump’s belief that he was in imminent danger of suffering death or great bodily harm at the hands of Sarter.
The jury received instructions upon manslaughter and was also instructed as to Crump’s right to act on appearances, that is, that the danger might be either real or apparent. The trial court committed no error in declining to grant the requested instruction.
Finally it is asserted on behalf of appellant that it was error to refuse to allow an officer to testify as an expert on the effect of gunshot wounds on a human being. The officer freely conceded that he had no special training in this field, he was not a doctor and his only alleged qualification as an expert witness was that he had investigated several homicides. The qualifications of a witness to testify as an expert are to be determined by the trial judge, in his sound discretion. Grinnel v. State, 230 So.2d 55 (Miss.1970). The record does not reflect what the testimony of the witness would have been had he been permitted to testify. There was no proffer of testimony and it is impossible to determine from the record whether the testimony of the witness would have been material or relevant, if it had been permitted.
It appears from the record that no reversible error was committed in Crump’s trial and that the alleged errors assigned for reversal are without merit. The conviction must, therefore, be affirmed.
AFFIRMED.
*228 PATTERSON, C. J., ROBERTSON, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.