# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 6, 2007 Session

## STATE OF TENNESSEE v. DAVIDSON M. TAYLOR

**Appeal from the Criminal Court for Shelby County**
No. 04-01632    Paula Skahan, Judge

No. W2006-00543-CCA-R3-CD  - Filed October 12, 2007

The Appellant, Davidson M. Taylor, appeals his convictions by a Shelby County jury for felony evading arrest in a motor vehicle and driving under the influence ("DUI"). For his felony conviction, Taylor received a one-year suspended sentence. Taylor was also sentenced to eleven months and twenty-nine days for the DUI conviction, with forty-eight hours to be served in confinement. On appeal, Taylor argues that the trial court misapplied established rules of evidence when it ruled that a defense witness' testimony be stricken. Following review of the record before us, we find no error and affirm the judgments of conviction and resulting sentences.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined. JERRY L. SMITH, J., filed a separate opinion, concurring in results.

Charles E. Waldman (on appeal), Memphis, Tennessee; and Jake Erwin (at trial), Memphis, Tennessee, for the Appellant, Davidson M. Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kirby May, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Around midnight on May 2, 2003, John Tremmel, an off-duty deputy with the Shelby County Sheriff's Department, was traveling home on Interstate 40 after completing his shift.[1] As he approached the Austin Peay exit, he noticed several cars making abrupt lane changes. As he neared these cars, he determined that they were swerving to avoid an extremely slow-moving Grand Marquis, which was being driven erratically and was "going from one side of the [three-lane]

---

[1]Tremmel testified that he was a detective in the Narcotics Division of the Shelby County Sheriff's Department.

highway to the other." Tremmel was not prepared to stop the vehicle, as he was not in uniform at the time, and he was driving an unmarked Sheriff's department vehicle. Nonetheless, Tremmel continued to follow the Grand Marquis. As the car approached the Summer Avenue exit, it came to a complete stop in the middle of the roadway. According to Tremmel, other vehicles traveling on the roadway were forced to swerve around the stopped car in order to avoid hitting it. After remaining stationary for ten to fifteen seconds, the vehicle drove away and resumed travel on the interstate, still driving erratically. During this time, Tremmel was able to arm himself with his service weapon, put on his bulletproof vest, and place his badge around his neck.

Once Tremmel was properly prepared to stop the car, he activated his emergency equipment, including both lights and sirens. Although Tremmel activated his emergency equipment just past the Walnut Grove exit, the Marquis continued on until it reached the Nonconnah exit. After taking this exit, the driver of the Marquis stopped the car straddling the line between the emergency lane and the lane of traffic, creating a traffic risk for drivers exiting on the ramp who could not see the parked car. Tremmel observed the driver of the Marquis emerge from the car and noted that he had difficulty standing and walking. As Tremmel approached the driver, later identified as the Appellant, he also noticed that the Appellant smelled of alcohol, that his eyes were watery and bloodshot, and that his speech was slurred. The Appellant informed Tremmel that he had been to an office party.

After the Appellant was stopped, Tremmel requested that a "Metro DUI officer" be dispatched to the scene. In the interim, Tremmel obtained the Appellant's driver's license and attempted to keep the Appellant occupied by talking with him until the requested DUI officer arrived. After approximately ten minutes, the Appellant became frustrated and returned to his car. Despite Tremmel's instruction to stop, the Appellant proceeded to drive away, and Tremmel did not believe that it was safe to attempt to stop the Appellant under the circumstances. Rather, Tremmel followed the Appellant and alerted dispatch to the situation. As the Appellant turned onto Ridgeline Road, Tremmel realized that the Appellant was proceeding to the address listed on his driver's license. The Appellant parked near his residence, got out of the car, and walked toward his house. At that point, Tremmel exited his vehicle and handcuffed the Appellant. Minutes later, other officers arrived on the scene to assist.

Sergeant Davis, the dispatched "DUI tech," administered several field sobriety tests to the Appellant, all of which the Appellant was unable to successfully complete. According to Davis, the Appellant had problems even paying attention to the instructions for completion of the tests. Based upon his inability to perform various field sobriety tests, which were videotaped, Davis determined that the Appellant was extremely impaired.

On March 11, 2004, a Shelby County grand jury returned a six-count indictment against the Appellant charging him with: (1) intentionally evading arrest in a motor vehicle; (2) driving under the influence of an intoxicant; (3) driving under the influence of a drug; (4) driving under the influence of an intoxicant and a drug; (5) driving under the influence with a blood alcohol level of .20 or greater; and (6) reckless driving. A jury trial commenced on August 22, 2005. Prior to submission to the jury, the State dismissed Count 5, driving under the influence with a blood alcohol

level of .20 or greater.[2]  Additionally, after submission to the jury, the trial court granted the Appellant's motion for judgment of acquittal with regard to the driving under the influence of a drug and the driving under the influence of an intoxicant and drug charges.  Following deliberations, the jury returned verdicts finding the Appellant guilty of intentionally evading arrest in a motor vehicle, a Class E felony, and DUI.  However, the jury found the Appellant not guilty of reckless driving.

**Analysis**

On appeal, the Appellant argues that the trial court erred by instructing the jury to disregard the testimony of the only defense witness, the Appellant's wife.  During direct examination of the Appellant's wife, the following proof was elicited:

> [Defense Counsel:]  Did [the Appellant] - - let me ask you this.  Have you ever seen your husband intoxicated?
>
> [Mrs. Taylor:]  No, I have never seen him intoxicated.

Prior to cross-examination of the witness, the State requested a bench conference and gave notice of its intent to question the witness with regard to the Appellant's 1981 conviction for DUI. Trial counsel argued that his question to the witness had nothing to do with the Appellant having been convicted of a prior DUI; the witness was simply asked whether she had ever seen the Appellant intoxicated.  The trial court permitted the State, outside the presence of the jury, to ask the witness about her knowledge of the prior DUI.  The witness responded that, although she and the Appellant had been married for thirty-five years, they had separated at one point, around this time, and that she had no knowledge of the prior conviction.  In response, the State asserted:

> Your Honor, the defense has opened this door and it goes to one, her credibility as a witness.  It goes to her bias and her knowledge of the [Appellant]. She stated that she's never known him to drink - - to be intoxicated I think is what it was.
>
> . . . .
>
> . . . The State would seek that if it cannot ask that question, that all testimony of this witness be stricken.

Defense counsel persisted in his argument that, based upon the distinction in the question, the door was not opened.  The trial court, citing Tenn. R. Evid. 404(a), ruled as follows:

---

[2]At the sentencing hearing, the trial judge noted that the Appellant "did register over a .20" but that "the results of that test" were suppressed due to the officer's failure to comply with the requirements of *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992).

. . . It's almost as if you're opening the door to his character through his wife that he's just not a drinker. And to me, that should allow the State to ask a question about a prior instance of drinking but I think we need to err on the side of caution since I think if the jury finds out about a prior DUI, they will consider it for propensity and - - propensity of evidence that he does drink and drive and the probative value is substantially outweighed by the prejudicial effect.

But I think this was - - had I known what Ms. Taylor was going to testify about, I would not have allowed it. And I think this is really misleading to the jury. . . . I can't allow you to ask that question. . . .

The State's request to strike Mrs. Taylor's testimony was then granted by the trial court.

The Appellant's argument that the trial court erred by striking Mrs. Taylor's testimony is threefold. First, he asserts that allowing the prior conviction to be utilized for impeachment purposes violated *Crawford v. Washington*. This argument is clearly misplaced. In capsule, the holding in *Crawford* reaffirms a criminal defendant's right to be protected against State introduced evidence which violates the defendant's fundamental right of confrontation. In this case, it was the Appellant who introduced the issue of character evidence at trial, and, clearly evidence challenging the character trait is not "testimonial" within the meaning of *Crawford*. *See Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). Second, the Appellant contends that the trial court failed to "consider that the real issue was the expungement of the DUI, not the existence of the prior DUI." According to the Appellant, the court failed "to recognize that the 1981 DUI conviction had been expunged prior to the change in the law of 1986, which prohibited the expungement of a DUI." No evidence or order of expungement was introduced at trial establishing that the Appellant's 1981 DUI conviction had in fact been expunged. Moreover, we know of no authority, nor does the Appellant cite to any, which allows the expungement of a DUI conviction.[3] Third, the Appellant argues that because the DUI conviction was more than ten years old, its admission is barred by Tenn. R. Evid 609(b). As discussed, *infra*, introduction of evidence to counter evidence of good character is governed by Tenn. R. Evid. 404 and 405, which has no ten-year limitation. Rules 404 and 405 are not restricted by Rule 609, as the rules are distinct and have different standards of application and consequences.

The State's request to introduce evidence of the Appellant's 1981 DUI conviction during cross-examination is governed by Tenn. R. Evid. 404(a) and 405. Rule 404(a), which addresses the admissibility of character evidence, provides:

---

[3]In Tennessee, expungement of a criminal conviction is available only upon successful completion of a grant of pre-trial or judicial diversion or if the criminal charge is dismissed or the accused is found not guilty. *See* T.C.A. § 40-32-101(a)(1)(A) (2006). Our law plainly provides that a defendant who is convicted of driving while intoxicated is prohibited from seeking either pre-trial or judicial diversion. *See* T.C.A. § 40-15-105(c) (2006); T.C.A. § 55-10-403(b)(1) (2006); *State v. Vasser*, 870 S.W.2d 543 (Tenn. Crim. App. 1993).

(a) . . . Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity with the character or trait on a particular occasion, except:

(1) . . . Evidence of a pertinent character trait offered by the accused or by the prosecution to rebut the same.

Tenn. R. Evid. 404(a)(1). It is well established that sobriety or temperance, which is defined as moderation in or abstinence from the use of intoxicating drink, is clearly a character trait as referenced under this rule. *See Henderson v. State*, 539 S.W.2d 843, 846 (Tenn. Crim. App. 1976).

The treatise *Tennessee Law of Evidence* elaborates on this exception and to the general ban on character evidence of the accused, explaining that Rule 404(a)(1) embodies a very important exception to the general bar on the admissibility of character evidence of the accused. Neil P. Cohen, et al., *Tennessee Law of Evidence* § 4.04[4][a] (5th ed. 2005). This exception allows admission of character evidence when the accused "opens the door" by introducing evidence to prove a character trait, inevitably to demonstrate his or her own good character. *Id*. However, the accused is only allowed to introduce evidence of a "pertinent' character trait, meaning a character trait at issue in the trial. *Id*. at 4.04[4][b]. For example, the accused's character for honesty would be a pertinent character trait if he or she were charged with embezzlement. *Id*. In this case, the question of sobriety was clearly "pertinent" because the Appellant was charged with DUI.

Once the accused introduces evidence of his or her own good character, the State may also address the issue of the accused's character in order to prevent the trier of fact from receiving a one-sided view of the defendant's character. *Id*. at § 4.04[4][a]. Furthermore, the defendant's proof under Rule 404(a)(1) is limited to reputation and opinion evidence only. *Id*. at § 4.04[4][c]. However, under Rule 405(a), the State may introduce evidence of specific instances of conduct when cross-examining a defense witness in response to the presentation by the accused of this reputation or opinion character evidence. *Id*. These include acts resulting in criminal convictions. *Id*. Additionally, Rule 405 requires that the court hold a jury-out hearing to determine whether a reasonable factual basis exists for the inquiry and to determine whether the probative value of a specific instance of conduct regarding the character witness' credibility outweighs its prejudicial effect on substantive issues. Tenn. R. Evid. 405(a)(1)-(3).

It is obvious that the wife's testimony, specifically that during their thirty-five years of marriage she had never seen the Appellant intoxicated, was offered as evidence of the Appellant's character trait for temperance or sobriety. This testimony was permissible under 404(b). Nonetheless, we reject the Appellant's argument that this evidence did not "open the door" to the issue of the pertinent character trait. Clearly, the evidence was offered to show that he acted in conformity with that trait on the instant occasion. Thus, the State was entitled to offer evidence to rebut the existence of the trait. However, as noted, the admissibility of a specific instance of conduct is governed by the provisions of Rule 405.

It is clear from the record that the trial court properly followed the dictates of Rule 405 in determining whether specific instances of conduct were allowed to be presented as evidence in rebuttal. The court held a jury-out hearing in this case as required. Additionally, the court determined that the probative value of the specific instance of conduct, the Appellant's prior DUI conviction, was outweighed by its prejudicial effect. Having so determined, one such remedy was that of precluding the State from questioning the Appellant's wife with regard to the Appellant's prior DUI conviction. We note that trial courts have a wide degree of discretion when determining whether to admit or exclude relevant evidence and will be reversed only for an abuse of that discretion. *State v. Forbes*, 918 S.W.2d 431, 439 (Tenn. Crim. App. 1995). No such abuse is evident from the record before us.

However, the court properly determined that it would be unfair to the State to allow the Appellant to "open the door" to the character trait of temperance and not allow the State to rebut that evidence. Accordingly, the remedy fashioned by the trial court under the circumstances was appropriate. To do otherwise would allow the Appellant to have misled the jury, leaving them with a false impression of the Appellant's temperance. Regardless, as argued by the State, even if error occurred in striking the testimony, the error was harmless based upon the overwhelming evidence of guilt presented by the State in this case. *See* Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

## CONCLUSION

Based upon the foregoing, the decision of the Shelby County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE