# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-00405-SCT

*TWONIA RENEE WILLIAMS a/k/a TWONIA*
*WILLIAMS a/k/a TWONIA R. WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/2012 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 04/18/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Twonia Renee Williams was convicted in the Circuit Court of Harrison County, Mississippi, for the murder of Katrina Sergeant. She was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MADOC). On appeal, Williams contends that jury instructions S-2A, S-4, and/or S-6 were given in error.

**FACTS**

¶2.    In late November, 2009, Twonia Williams ended her three-and-a-half year relationship with Sean Lindsay. According to Williams, she "put [Lindsay] out" of her home due to his continued infidelity. Almost immediately, Lindsay moved in with his new girlfriend, Katrina Sergeant, her three children, and her niece, Stacey McCall.

¶3.    McCall testified that, around midnight on December 5, 2010, she and Sergeant drove to the gas station in "[Lindsay's] truck" to purchase "black and mild . . . cigars]." Williams's cousin recognized McCall and Sergeant in Lindsay's truck and called Williams to inform her of what she had seen. Williams admitted being upset by this information because she had "just struggled to get the $2000 to get [the truck] paid off so [Lindsay] could get his title."

¶4.    Shortly after McCall and Sergeant returned home from the gas station, Williams began calling Lindsay's phone repeatedly. Lindsay placed the calls on speaker phone, and McCall overheard Williams say she was "about to come blow up the house, blow up everybody in there." Williams continued calling until Lindsay turned his phone off, at which point, she got in her car and drove to Sergeant's house. According to Williams, she initially was not going to stop, but, as she drove by, she saw the front "door . . . fly open" and believed that "[Lindsay] was coming out to talk to her." However, Sergeant, and not Lindsay, emerged from the front door. Williams testified that she parked and exited her car with "the gun in [her] hand," and that an argument ensued between her and Sergeant. Williams claimed that she told Sergeant she just "wanted to see [Lindsay]," but that Sergeant told her, "you need to leave, you're not going to talk to [Lindsay], you need to leave." Williams admitted that, at some point in the argument, she shot Sergeant, causing her death.

2

¶5.     On July, 26, 2010, Williams was indicted for "willfully, feloniously and without the authority of law kill[ing] and murder[ing] Katrina Sergeant, a human being, with deliberate design . . . ." *See* Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2006). On February 14, 2012, the jury trial commenced. Williams testified on her own behalf, ". . . sometime or another I did pull the trigger . . . I was arguing with [Sergeant] and I was talking with her with my hand. The gun went off, and I heard it pop and saw [Sergeant] go to the ground." Despite acknowledging on direct examination that she "did pull the trigger," Williams claimed that she shot Sergeant by accident. However, two eyewitnesses contradicted Williams's claim. McCall testified that she was outside with Sergeant when the confrontation took place, and that Williams raised the gun up to Sergeant's face and pulled the trigger. McCall also testified that, around the time she pulled the trigger, Williams stated, "I don't give a f***." Furthermore, Sergeant's neighbor, Carsie Durr, testified that he witnessed part of the confrontation from his front yard and that the shot "wasn't like an accident . . . [Williams] deliberately pulled that gun up and shot one time . . . ." In addition to the two eyewitnesses, the State offered two experts whose testimony contradicted Williams's. The State's forensic expert, Dr. Paul McGarry, testified that Sergeant suffered a "close range wound within 12, 18, 20 inches . . . ." Lori Beall, a firearms expert, testified that the type of gun used has certain safety mechanisms that require the trigger be pulled in order to prevent accidental firing.[1]

---

[1]The gun used was a Rossi .357 magnum revolver. Beall testified that the gun requires fifteen-seventeen pounds of trigger pressure to fire when the hammer is unbooked. If the

3

¶6.     Williams was found guilty of murder and sentenced to "life imprisonment in the custody of the Mississippi Department of Corrections." After hearing, the circuit court denied Williams's "Motion for New Trial or Judgment Notwithstanding the Verdict (NOV)." Thereafter, Williams filed this "Notice of Appeal."

## ISSUE

¶7.     On appeal, this Court will consider:

Whether the circuit court erred in granting instructions S-2A, S-4 and/or S-6.

## ANALYSIS

¶8.     The jury instructions at issue read, in pertinent part:

[A] person is *presumed* to have intended the natural and probable consequences of his voluntary and deliberate acts. (Instruction S-4.)

"[D]eliberate design" *may be inferred* through the intentional use of any instrument which based on its manner of use is calculated to produce death or serious bodily injury. (Instruction S-2A.)

[I]f wounds are inflicted upon a person with a deadly weapon in a manner calculated to destroy life then intent *may be inferred* from the use of the weapon. (Instruction S-6.)

(Emphasis added.)

¶9.     "Jury instructions are generally within the discretion of the trial court and the settled standard of review is abuse of discretion." *Bailey v. State*, 78 So. 3d 308, 315 (Miss. 2012) (citing *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010)). "The instructions are to be read

hammer is cocked, the gun requires two to two and a half pounds of trigger pressure to fire.

4

together as a whole, with no one instruction to be read alone or taken out of context." *Id*. (quoting *Young v. State*, 891 So. 2d 813, 819 (Miss. 2005)). "When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id*. (citing *Newell*, 49 So. 3d at 73).

¶10. Williams was indicted for "deliberate design" murder pursuant to Mississippi Code Section 97-3-19(1)(a). "[D]eliberate design connotes an intent to kill . . . ." *Brown v. State*, 965 So. 2d 1023, 1030 (Miss. 2007). Thus, "intent" was an essential element of the crime upon which the State was required to prove Williams's guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Hodges v. State*, 743 So. 2d 319, 324 (Miss. 1999) ("The State is required to prove every element of the offense charged beyond a reasonable doubt.") (citing *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991)). This burden of proof "never shifts from the State to the defendant." *Sloan v. State*, 368 So. 2d 228, 229 (Miss. 1979).

¶11. Williams admits that she shot and killed Sergeant. Her defense at trial was that the shooting was an accident, and, therefore, she lacked the requisite intent to be found guilty of "deliberate design" murder.[2] Consequently, Williams argues that S-4, along with S-2A and S-6, shifted the burden of proof on the only contested issue at trial, *her intent, vel non*.

---

[2]Consistent with this defense, Williams received two separate manslaughter instructions and an instruction on accident or mistake.

5

¶12.    Williams relies primarily on the United States Supreme Court's holdings in *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), and *Francis v. Franklin*, 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985). In *Sandstrom*, Sandstrom admitted to the killing, but defended on the grounds that it was not "deliberate." *Id*. at 512. Therefore, "[intent] was the lone element of the offense at issue . . . ." *Id*. at 520-21. The jury was given the following instruction: "[T]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Id*. at 512. In *Francis*, the Court again examined a case where "intent" to commit murder was "the only contested issue at trial." *Francis*, 471 U.S. at 309. The jury was instructed, "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." *Id*. at 311. These two instructions are indistinguishable from S-4. In both cases, the Court emphatically held that the instruction violated the Due Process Clause in that it shifted the burden of proof to the defendant on an essential element of the charged offense, *i.e.*, intent. *Sandstrom*, 442 U.S. at 521; *Francis*, 471 U.S. at 325.

¶13.    This Court has condemned similar presumptive instructions. In *Tran v. State*, 681 So. 2d 514, 516 (Miss. 1996), the jury was given the following instruction: "Deliberate design may be *presumed* from the unlawful and deliberate use of a deadly weapon." (Emphasis added.) This Court held that the instruction was given in error because "it relieved the prosecution of its [burden of] persuasion." *Id*. at 518.

¶14.    The State counters that, when the instructions are read as a whole, S-4 did not shift the burden of proof. Specifically, the State directs this Court to instructions C-3, C-6, S-8 and

6

S-10. C-3 instructed the jury that Williams was "presume[d] . . . innocent" and that the "State must prove beyond a reasonable doubt" that Williams was "guilty of every material element of the offense." C-5 instructed the jury, in pertinent part, "not to single out any certain . . . instruction and ignore others. The order in which these instructions are given has no significance . . . ." S-8 allowed the jury to find Williams not guilty based on "accident or misfortune," and S-10 encompassed the lesser-included offense of manslaughter.

¶15.    But *Sandstrom* and *Francis* addressed and rejected the very arguments presented by the State. In addition to the erroneous instruction, the *Sandstrom* "jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt, that the defendant caused the death of the deceased purposely or knowingly." *Sandstrom*, 442 U.S. at 518 n.7; *Francis*, 471 U.S. at 311.[3] The general instructions given in *Sandstrom* and *Francis* are very similar to those relied on by the State. The Court found that "[t]hese general instructions as to the prosecutor's burden and the defendant's presumption of innocence do not dissipate the error in the challenged portion of the instructions." *Francis*, 471 U. S. at 319-20.

¶16.    Comparing the instructions reveals an additional conflict. S-4 conflicts with instruction S-9. S-9 stated, "[t]he Court instructs the jury that an intentional act cannot be excused under the doctrine of accident or misfortune." When S-4 and S-9 are read together, a reasonable juror may have determined that the shooting could not have been an accident

_____

[3]Along with the two instructions noted in *Sandstrom*, jurors in *Francis* also were instructed on "misfortune or accident."

7

because "[Williams was] *presumed* to have *intended* the natural and probable consequences of [her] . . . acts" and "an *intentional* act cannot be . . . [an] accident . . . ."

¶17.    Additionally, the State argues that instruction S-4 did not employ the mandatory terms "shall" or "will," and, therefore, merely created a permissive inference for the jury. Yet, the absence of "shall" or "will" does not automatically render S-4 permissive. Rather, we consider the distinctive differences between "infer" and "presume." "Infer" is defined as "to conclude from certain premises or evidence." Webster's II *New College Dictionary* 567 (2001). By this definition, a jury may not make an inference without evidence adduced at trial to support that inference. However, S-4 did not employ "infer," but instead used "presume," which is defined as "to *assume* to be true without proof to the contrary." Webster's II *New College Dictionary* 875 (2001). "Assume" is analogous to "presume" and "stress[es] the arbitrary acceptance as true of something which has not yet been proved." Webster's *Dictionary of Synonyms* 646 (1942). As a presumption is accepted as true without proof to the contrary, it follows that the burden was shifted to the defendant to provide proof.

¶18.    The ***Sandstrom*** Court addressed the contention that the instruction merely created a permissible inference and stated, "[this] argument[] need not detain us long . . . [,]" for "Sandstrom's jurors . . . were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it." ***Sandstrom***, 442 U.S. at 514-15; *see* ***Francis***, 471 U.S. at 316 ("The challenged [instruction is] cast in the language of command.") "It is clear that a reasonable juror could easily have viewed such an instruction

8

as mandatory." *Sandstrom*, 442 U.S. at 515. S-4 created a mandatory presumption, not a permissible inference, and, therefore, the State's argument must fail.

¶19.    S-2A and S-6 clearly illustrate the distinction in which the jury is given guidance on what it may infer from the evidence adduced at trial. In contrast to S-4, S-2A and S-6 explicitly used the phrase "may be inferred." In addition to including the permissive "may," the instructions allow the jury *the discretion* to reach a conclusion only if evidence has been presented to support that conclusion, thus creating a true permissive inference. *Francis*, 471 U.S. at 314 ("A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.") Therefore, S-2A and S-6 "told [the jurors] that they had a choice, or that they might *infer* that conclusion." *Sandstrom*, 442 U.S. at 515 (emphasis added). They did not tell the jurors "that the law presumed it." *Id*.  S-2A and S-6 do not create a mandatory presumption, and, therefore, do not impermissibly shift the burden of proof. *See Rose v. Clark*, 478 U.S. 570, 581, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) ("No one doubts that the trial court properly could have instructed the jury that it could *infer* malice from respondent's conduct.") (emphasis in original).

¶20.    S-4 is practically indistinguishable from the burden-shifting instructions condemned in *Sandstrom* and *Francis* and the instruction which relieved the prosecution of its burden of persuasion condemned in *Tran*. In contrast to the permissive inference established by S-2A and S-6, S-4 created a mandatory presumption which could allow a conviction based

upon a presumption as opposed to evidence beyond a reasonable doubt. Therefore, S-4 was given in error.

¶21.　Having found error, this Court may consider whether such error was harmless. "Error is harmless if it is clear beyond a reasonable doubt that it did not contribute to the verdict." *Conley v. State*, 790 So. 2d 773, 793 (Miss. 2001) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). Undoubtedly, the State presented substantial evidence of Williams's guilt. *See supra* ¶ 5. However, Williams testified that the shooting was an accident. Her testimony was sufficient to warrant an instruction on accident or mistake, which was granted. Once her defense was placed in issue and the instruction given, it was the duty of the jury to consider Williams's testimony and defense among all the other evidence presented. It was S-4 which created this dilemma, for it is impossible to determine beyond a reasonable doubt whether the jury engaged in this consideration or merely relied on S-4's presumption as to intent. We cannot conclude that is it is "clear beyond a reasonable doubt that [S-4] did not contribute to the verdict." *Conley*, 790 So. 2d at 793.

## CONCLUSION

¶22.　The circuit court erred in granting instruction S-4, and such error cannot be considered harmless in this case. Therefore, we reverse Williams's conviction and sentence and remand the case to the Circuit Court of Harrison County for a new trial consistent with this opinion.

¶23.　**REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**