# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00807-SCT

*ISAIAH JEROME GUNN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/22/2022 |
| TRIAL JUDGE: | HON. KELLY LEE MIMS |
| TRIAL COURT ATTORNEYS: | MEGAN DIANE FRENCH |
| | CLAYTON MATTHEW CUMMINGS |
| | KYLE DAVID ROBBINS |
| | CLAY SPENCER NAILS |
| | JOHN DAVID WEDDLE |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN T. COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY L. SULSER |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/30/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. On July 21, 2022, Isaiah Gunn was convicted of first degree murder, attempted murder, aggravated assault and shooting into a dwelling. Gunn was sentenced to life, forty years, twenty years and ten years respectively. On appeal, Gunn argues that the jury was improperly instructed and that the State failed to present sufficient evidence to support his

convictions because he acted in self-defense. Gunn asks this Court to reverse and render his convictions. This Court affirms Gunn's convictions on all counts.

## FACTS AND PROCEDURAL HISTORY

¶2.     On April 12, 2021, a grand jury in Alcorn County indicted Isaiah Gunn on four counts, charging him with first degree murder, two counts of attempted murder and shooting a firearm into a dwelling. Gunn's jury trial took place in the Alcorn County Circuit Court from July 18-21, 2022.

¶3.     At Gunn's trial, the State called eleven witnesses. In addition to the witnesses, the State also presented security footage of the events that occurred on the evening of October 24, 2020.[1] The testimony and security footage presented at trial depicted the following facts. In the late morning of October 24, 2020, Gunn was visiting the residence of Brandy Smith. Gunn and Smith had, at one point, been involved in a romantic relationship; however, by October 24, they had ended that relationship, and Smith had begun seeing another man, Mickey Robinson. Gunn was characterized as being upset and jealous about Smith's relationship with Robinson. During Gunn's morning visit to Smith's residence, an argument broke out. According to the testimony of Ginger Voyles, the argument began because someone at the house had taken Gunn's phone. The argument moved from inside the house to outside. When he heard yelling, Robinson, who was at Smith's parents' house next door, came over to Smith's house. Robinson testified that Gunn had a firearm and was pointing it

_____

[1]Brandy Smith lived in a house next door to her parents, separated by a driveway. Smith's father had placed security cameras all around the perimeter of his home. This was the source of the security footage that was obtained by the sheriff's department and played for the jury at trial.

2

toward Smith. Robinson stated that he stepped in between Gunn and Smith and attempted to calm Gunn down as he walked Gunn out of the yard and away from Smith and the house. When they reached the road, Robinson testified that Gunn shot his firearm into the air.

¶4.     A neighbor called the police after hearing the gunshot. Deputy Chris Settlemires responded to the call and arrived at Smith's residence at 11:10 a.m. When Deputy Settlemires arrived, Gunn had already left, and Smith did not wish to press charges. A second responding officer located a shell casing across the street from Smith's house.

¶5.     Later that same day, Gunn called Smith and asked if he could "come over . . . , get something to eat, and a ride home[.]" After some initial hesitation, Smith agreed to let Gunn come back to the house, but she told him that she would not drive him home herself; instead, Robinson would drive him home. Gunn agreed and arrived back at Smith's house shortly after the phone call. Several other people—including Robinson, Daniel Guillot, and Ginger Voyles—were already at Smith's house getting ready to leave and head into town.

¶6.     Some discussion ensued about who was going into town and who was driving. Smith agreed to let Gunn ride in the car she was driving and asked Robinson to accompany them. A disagreement arose once again, this time between Robinson and Gunn concerning the plans for the evening. The argument became heated, and Smith went inside her parents' home next door and retrieved her father's shotgun. Smith came back outside with the shotgun and asked Gunn to leave. The security footage then shows Gunn bumping into Smith and flashing his gun. Smith then raised the shotgun towards Gunn. Robinson testified that Smith raised the shotgun towards Gunn after Gunn threatened to shoot Robinson. Flanked by

3

Guillot and Robinson, Smith walked Gunn backwards down the driveway with the shotgun raised and pointed towards Gunn, all the while telling Gunn that he needed to leave.

¶7. The security footage of the incident shows Gunn backing down the driveway when he suddenly pulls his firearm out of his jacket pocket and fires multiple times in the direction of Smith, Robinson and Guillot. One of the rounds fired by Gunn hit Smith, and she fell to the ground. Gunn briefly checked on Smith and then ran after Robinson, firing off several more shots. One of the bullets hit Robinson in the left leg. Several of the bullets also entered the home of a neighbor, Jon Meredith. Gunn then fled the scene.

¶8. When law enforcement arrived, Smith had no pulse. The medical examiner testified that Smith died from a gunshot wound to the head. Several hours later, Gunn's mother brought him to the Alcorn County Sheriff's Department.

¶9. On July 21, 2022, the jury returned a verdict, convicting Gunn of first degree murder of Smith, attempted murder of Robinson, aggravated assault of Guillot and shooting into the dwelling of Meredith. The court sentenced Gunn to life for the first degree murder conviction, forty years for attempted murder, twenty years for aggravated assault and ten years for shooting into a dwelling, all to be served concurrently.

**ISSUES PRESENTED**

¶10. The issues on appeal can best be summarized as follows:

    I.    Whether the court erred by granting a jury instruction allowing an inference of deliberate design.

    II.    Whether the verdict was contrary to the weight of the evidence.

**DISCUSSION**

4

## I. The court did not err by granting a jury instruction allowing an inference of deliberate design.

¶11. At trial, the court granted the State's proposed jury instruction regarding deliberate design. It stated: "[i]f you find that Isaiah Jerome Gunn intentionally used a deadly weapon to kill Brandy Mauney Smith, then you may infer from his act that he acted with deliberate design to effect her death." When the court asked if the defense had any objection to the instruction, defense counsel responded: "I see there are citations to both the model jury instructions as well as *Holliman v. State* and *Williams v. State*. I do object to that though." The court overruled defense counsel's objection, and the instruction was given to the jury as Instruction Number 9.

¶12. The State first argues that defense counsel's objection to the instruction was insufficient to preserve any error for appeal. In *Ross v. State*, 954 So. 2d 968, 987 (Miss. 2007), this Court stated that "[a]n objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error." The objection in *Ross*, however, is distinguishable from the one made in the present case. In *Ross*, the defendant argued that an objection was made in the trial court, preserving the error for appeal. *Id.* Notably, no actual objection was ever made at trial. *Id.* This Court held that "[d]efense counsel's general statement that he 'wondered' about 'how beneficial' the statements were, without more, was not a specific enough objection to preserve the issue for appeal." *Id.*

¶13. Unlike the nonexistent objection in *Ross*, defense counsel made an objection to the jury instruction in the present case. Furthermore, "[t]his Court has recognized that 'it would

5

be vain and foolish to demand that in the heated flow of trial, where the grounds of the objection are reasonably apparent from the context, that counsel state his grounds or waive his objection.'" **Willis v. State**, 352 So. 3d 602, 612 (Miss. 2022) (quoting **Murphy v. State**, 453 So. 2d 1290, 1293 (Miss. 1984)). When defense counsel made the objection, he noted that the authority for the proposed instruction cited both **Holliman v. State**, 178 So. 3d 689 (Miss. 2015), and **Williams v. State**, 111 So. 3d 620 (Miss. 2013). This Court discussed the use of the word *infer* versus *presume* extensively in both cases. *See* **Holliman**, 178 So. 3d at 702; **Williams**, 111 So. 3d at 625-26. While counsel did not specifically cite legal grounds for the objection, by referencing the instruction's citations of specific legal authorities, which thoroughly discuss the permissive language of jury instructions, it is clear from the context that counsel's objection concerned the language of the jury instruction and its use of the phrase "you may infer." The purpose of requiring a specific objection is not to hide the ball. Therefore, this Court concludes that defense counsel's objection was sufficient to preserve the alleged error for appellate review.

¶14.     As for the permissibility of the instruction itself, this Court reviews the grant or denial of jury instructions for an abuse of discretion. **Anderson v. State**, 361 So. 3d 609, 614 (Miss. 2023) (citing **Quinn v. State**, 191 So. 3d 1227, 1232-33 (Miss. 2016)). "In short, '"if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."'" **Quinn**, 191 So. 3d at 1232 (quoting **Victory v. State**, 83 So. 3d 370, 373 (Miss. 2012)). When reviewing jury instructions, "'[n]o one instruction should be singled

out.' This Court reviews jury instructions as a whole to determine if any error occurred." *Id.* (citations omitted).

¶15.    Gunn argues that the instruction "impermissibly commented on the weight of the evidence, was argumentative, and deprived him of a fair and objective consideration of the evidence by the jury." Gunn asserts that "[i]nstructions that comment on the weight of the evidence are not proper." ***Howell v. State***, 860 So. 2d 704, 745 (Miss. 2003) (citing ***Austin v. State***, 784 So. 2d 186, 193 (Miss. 2001)). Gunn fails, however, to explain how this particular jury instruction commented on the weight of the evidence. Undeniably, Gunn possessed and used a deadly weapon resulting in the death of Smith. We fail to see how the jury instruction commented on the weight of the evidence or singled out a particular piece of evidence absent any analysis from Gunn, especially when read in conjunction with the rest of the jury instructions.

¶16.    As the dissent points out, it is worth reiterating that attorneys should use caution and avoid copying jury instructions from the language of judicial opinions. *See **Freeze v. Taylor***, 257 So. 2d 509, 511 (Miss. 1972). This worry is unfounded in this case, however, since this Court has affirmed the use of a similar jury instruction in ***Williams***, 111 So. 3d at 625-26, and has repeatedly held that deliberate design may be inferred from the intentional use of a deadly weapon. *See **Holliman***, 178 So. 3d at 698; ***Anderson v. State***, 79 So. 3d 501, 507 (Miss. 2012); ***Carter v. State***, 722 So. 2d 1258, 1263 (Miss. 1998). The language of Mississippi's Model Jury Instruction reads: "[i]f you find that the defendant *intentionally used a deadly weapon to either kill or cause great bodily injury* to another person, then you

may conclude from [*his/her*] act that the defendant acted with malice." Miss. Jud. Coll., *Mississippi Plain Language Model Jury Instructions* (*Criminal*) § 211, Westlaw (database updated Oct. 2023) (emphasis added). The language of this model jury instruction is nearly identical to the language used in the present case.

¶17. In **Williams**, this Court affirmed the use of a jury instruction similar to the one used in the present case. The instruction in **Williams** was as follows: "'[D]eliberate design' *may be inferred* through the intentional use of any instrument which based on its manner of use is calculated to produce death or serious bodily injury." **Williams**, 111 So. 3d at 623 (alteration in original). There, the Court held that the instruction "allow[ed] the jury *the discretion* to reach a conclusion only if evidence has been presented to support that conclusion, thus creating a true permissive inference." **Id.** at 625 (citing **Francis v. Franklin**, 471 U.S. 307, 314, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985)). In contrast, this Court has proscribed the use of jury instructions that direct the jury to "*presume* deliberate design from the unlawful and deliberate use of a deadly weapon . . . ." **Reith v. State**, 135 So. 3d 862, 866 (Miss. 2014) (emphasis added).

¶18. Gunn argues that "there is no appreciable distinction between a 'may presume' and 'may infer' in the minds of the average juror." This Court, however, has clearly the distinguished the two:

> [W]e consider the distinctive differences between "infer" and "presume." "Infer" is defined as "to conclude from certain premises or evidence." By this definition, a jury may not make an inference without evidence adduced at trial to support that inference. However, [the instruction at issue] did not employ "infer," but instead used "presume," which is defined as "to *assume* to be true without proof to the contrary." "Assume" is analogous to "presume" and

8

"stress[es] the arbitrary acceptance as true of something which has not yet been proved."

*Williams*, 111 So. 3d at 625 (third alteration in original) (citations omitted). Gunn also argues that the instruction is an impermissible amalgamation of language from this Court's prior opinions, something this Court has warned against. *See Freeze*, 257 So. 2d at 511 ("We have repeatedly warned attorneys against copying sentences from opinions of this Court into instructions."). While this warning bears repeating, it is not applicable here as this Court has also repeatedly affirmed the practice of "instructing the jury on a permissive inference[.]" *Holliman*, 178 So. 3d at 703; *Williams*, 111 So. 3d at 625-26; *see also Rose v. Clark*, 478 U.S. 570, 581, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986) ("No one doubts that the trial court properly could have instructed the jury that it could *infer* malice from respondent's conduct.").

¶19.    Instruction Number 9 first told the jury "[i]f you find that [Gunn] intentionally used a deadly weapon to kill [Smith]," thereby recognizing that the jury was permitted to either accept or reject that finding. It then instructed the jury that it "*may* infer . . . that he acted with deliberate design[,]" a second permissive statement allowing the jury to draw the conclusions that it saw fit to draw given the evidence presented. This Court concludes that the jury was correctly instructed as to the legal significance of finding that Gunn intentionally used a deadly weapon to kill Smith and the permissive inferences that could stem from that finding.

## II.    The verdict was not contrary to the weight of the evidence.

¶20.    Gunn argues on appeal that the State failed to present sufficient evidence to overcome Gunn's theory of the case, that he acted in self-defense. Gunn correctly asserts that the

9

burden of proof rests with the State to disprove self-defense. ***Woods v. State***, 242 So. 3d 47, 60 (Miss. 2018). "The defendant is not required to prove he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, he must be acquitted." ***Id.*** (internal quotation marks omitted) (quoting ***Ambrose v. State***, 133 So. 3d 786, 791 (Miss. 2013)). Gunn, however, erroneously presents his argument as a sufficiency of the evidence argument. "[T]his Court has held that '[t]he issue of justifiable self-defense presents a question of *weight and credibility of the evidence* rather than sufficiency and is to be decided by the jury.'" ***Newell v. State***, 175 So. 3d 1260, 1268 (Miss. 2015) (second alteration in original) (quoting ***Wade v. State***, 748 So. 2d 771, 774 (Miss. 1999)).

¶21. When weight of the evidence is raised on appeal, this Court "must not disturb the jury's verdict unless [it] is 'convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" ***Id.*** (quoting ***Gossett v. State***, 660 So. 2d 1285, 1294 (Miss. 1995)). "In reviewing a weight-of-the-evidence challenge, we must also view the evidence in the light most favorable to the verdict." ***Burden v. State***, 347 So. 3d 174, 178 (Miss. 2022) (citing ***Little v. State***, 233 So. 3d 288, 289 (Miss. 2017)).

¶22. Gunn argues that his actions on the evening of October 24, 2020, were committed in self-defense. Mississippi Code Section 97-3-15(1) (Rev. 2020) lists cases in which the killing of a human being is justifiable. Gunn cites two of these scenarios as being applicable in the present case:

10

(e) When committed by any person in resisting any attempt unlawfully to kill such person or to commit any felony upon him, . . . or in the immediate premises thereof in which such person shall be;

(f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished[.]

Miss. Code Ann. § 97-3-15(1)(e), (f) (Rev. 2020).

¶23. Viewing the evidence in the light most favorable to the verdict, this Court finds that allowing the verdict to stand would not sanction an unconscionable injustice. The jury heard testimony that Gunn had been to Smith's house earlier in the day, that a fight had ensued and that he fired his weapon into the air across the street from Smith's home. Gunn was characterized as upset and jealous of Smith's new relationship with Robinson. After leaving Smith's home, Gunn returned later that same evening, and another disagreement arose, this time between Gunn and Robinson. Smith asked Gunn to leave and retrieved her father's shotgun. While backing Gunn down the driveway with the shotgun raised, Smith continued to ask Gunn to leave the premises. The security footage presented to the jury then showed Gunn remove a firearm from his jacket pocket and fire the weapon several times, with one bullet hitting Smith. After shooting Smith, Gunn chased after Robinson, who was unarmed, and continued firing his weapon, hitting Robinson in the leg.

¶24. When viewing the evidence in the light most favorable to the verdict, although Smith had a shotgun raised and pointed towards Gunn, she only retrieved the shotgun and raised it after asking Gunn to leave multiple times with the knowledge that he had a weapon and that he was threatening to cause harm to Robinson. The jury could have concluded that Gunn

11

was not in any imminent danger but was being asked to leave the property with the aid of a shotgun due to his previous behavior that day and the fact that he was carrying a firearm at the time of the incident. Furthermore, after shooting Smith, Gunn chased an unarmed Robinson and fired several more times, hitting him in the leg, thus further undermining his argument.

¶25.   Gunn set forth his self-defense argument—he had a shotgun pointed at him as he backed down the driveway, a situation that could place Gunn in fear of imminent serious bodily harm. The jury was instructed on self-defense, and the instruction was agreed to by Gunn. The jury was also instructed that an aggressor is precluded from pleading self-defense. Because Gunn had been at the house earlier in the day, fired his weapon, bumped into Smith aggressively, flashed his firearm at her and chased after Robinson after shooting Smith, the jury could have concluded that Gunn was the aggressor. Given both sides of the story, the jury—"the ultimate trier of fact and the 'final arbiter of a witness's credibility'"—concluded that Gunn did not act in self-defense. *Spiers v. State*, 361 So. 3d 643, 659 (Miss. 2023) (quoting *Howell*, 860 So. 2d at 731). Taking all of these facts in the light most favorable to the verdict, this Court holds that the verdict was not contrary to the overwhelming weight of the evidence.

## CONCLUSION

¶26.   This Court affirms Gunn's convictions. The jury was properly instructed on the law and the permissive inferences that it could make based on its findings of fact. Furthermore,

the verdict was not contrary to the overwhelming weight of the evidence and does not sanction an unconscionable injustice.

¶27. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM AND GRIFFIS, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ., AND ISHEE, J.**

**COLEMAN, JUSTICE, DISSENTING:**

¶28. The majority correctly writes that we have more than once held that deliberate design may be inferred from the use of a deadly weapon. Maj. Op. ¶ 17. However, the majority has not identified a case wherein we have addressed the argument made by the defendant against the jury instruction at issue here. The defendant, in arguing that the instruction was an improper comment on the evidence, cites a line of cases including *Freeze v. Taylor*, 257 So. 2d 511 (Miss. 1972); *Knight v. State*, 215 Miss. 251, 60 So. 2d 638 (1952); *Wood v. State*, 197 Miss. 657, 20 So. 2d 661 (1945); and *Gulf, Mobile & Northern Railroad Co. v. Weldy*, 193 Miss. 59, 8 So. 2d 249 (1942), cautioning trial courts against being overly eager in turning language from opinions into jury instructions. According to Gunn, that has happened here and resulted in an instruction that improperly comments on the evidence. I agree.

    **I.**    **The contested instruction is an improper comment on the evidence and results from an inappropriate taking of language from earlier opinions of the Court in contradiction of a long-standing admonishment against doing so.**

¶29. In *Knight v. State*, 60 So. 2d 639, Knight was convicted of manslaughter for shooting through the forehead another man who approached him in what Knight considered a threatening manner. Knight testified that the victim had a pistol when he approached, but

13

no pistol was found near his body. *Id.* at 639-40. The defendant requested the following instruction:

> The fact that the officers did not find a weapon upon or near the body of the deceased during their investigation does not establish the guilt of the defendant. And in order to establish that the defendant acted in self-defense at the time of firing the fatal shot, it is not essential that the defendant show that the deceased actually had a deadly weapon; but in cases of this character the law authorizes action on reasonable appearances; and if the conduct of the deceased was as to induce a reasonable belief that the deceased had a deadly weapon, then the defendant was justified in assuming that the deceased had one.

*Id.* at 640 (internal quotation marks omitted). The trial court refused to give the instruction. *Id.*

¶30. On appeal, the defendant contended that his proposed instruction followed language from *Scott v. State*, 203 Miss. 349, 34 So. 2d 718 (1948), an earlier opinion of the Court. The *Knight* Court did not take issue with Knight's contention that the instruction accurately tracked the language from *Scott*. However, the *Knight* Court affirmed the trial court's refusal of the instruction, writing, "We must again warn against quoting in instructions the reasoning or discussive portions of judicial opinions." *Knight*, 60 So. 2d at 640 (citing *Weldy*, 8 So. 2d at 250-251).

¶31. It is worth pausing here to compare the above-quoted instruction from *Knight*, which the *Knight* Court held was properly refused to the defendant, with the instruction at issue today, which the majority holds was properly granted. In the case *sub judice*, the trial judge granted the State's proposed jury instruction that stated, "If you find that Isaiah Jerome Gunn intentionally used a deadly weapon to kill Brandy Mauney Smith, then you may infer from

14

his act that he acted with deliberate design to effect her death." The **_Knight_** instruction sought to instruct the jury on the significance to its deliberations of the absence of a gun. **_Knight_**, 60 So. 2d at 640. The instruction at issue today instructed the jury on the significance of the presence of a gun to its consideration of the defendant's guilt. Although the majority writes that Gunn fails to explain how the instruction comments on the weight of the evidence, it is here that he does so.

¶32. In **_Weldy_**, 8 So. 2d at 250, the plaintiff sued the defendant railroad, alleging that, while the plaintiff rode as a trespasser on the defendant's freight train, the defendant's employee assaulted him. The trial court granted the following instruction requested by the plaintiff:

> The court instructs the jury for the plaintiff that if you believe from the evidence in the case that the defendant railroad company delegated to its brakeman or flagman the duty with reference to handling trespassers or persons riding upon its freight trains without authority of the company, either by its printed rules or by bulletin or special instructions to eject trespassers from its trains or take them to the conductor, *then the defendant was charged with the common knowledge that servants and agents sometimes disobey the orders of their masters*, and if you believe from the evidence in the case that the plaintiff was riding defendant's freight train and that its flagman or brakeman wilfully or maliciously ejected said plaintiff from said train while it was running or in motion and the plaintiff was injured, then under the law the defendant railroad company is liable to plaintiff for the acts of its said servant in so ejecting the plaintiff and the plaintiff is entitled to recover from the defendant for the damages, if any, sustained as a proximate result of being so ejected from the defendant's train.

**_Id._** (internal quotation marks omitted). The **_Weldy_** Court supplied the above italics and identified the italicized language as the objectionable portion. **_Id._** The Court held that the instruction was improper, writing that "the damaging import of the language, aside from its vice as being suggestive and upon the evidence, is that its tendency is to influence the jury

15

upon the factual issue as to whether the flagman assaulted plaintiff at all." *Id.* The Court went on: "We fear this charge so far misled the jury as that the evidence was disregarded, and the issue determined by common knowledge." *Id.* (internal quotation marks omitted) (quoting *Ill. Cent. R.R. Co. v. Greaves*, 75 Miss. 360, 22 So. 804, 805 (1897)). On the subject of putting matters that are common knowledge in a jury instruction, the Court wrote as follows:

> It may be common knowledge that a defendant on trial for his life is inclined to recall only such facts as may be useful to his defense and to so color circumstances as to diminish their visibility as incriminating, yet it would be error for the trial court to remind the jury of such probability. If a fact is a matter of common knowledge the jury need not be so told by the Court; if it is not, they should not be. Such matters may be taken into account either by the Court or the jury, but they are, in fine, matters of evidence and as such are not suitable material for instructions. To say that the jurors are free to integrate common knowledge into their reasoning is to say that they should be left free to do so. Their mental processes should be unaffected by any suggestion by the trial court. The quoted instruction, therefore, is palpably upon the weight of evidence, suggestive and argumentative.

*Id.* at 251 (citations omitted). The opinion in *Weldy* concluded with the admonition, discussed above, against borrowing language from written opinions for jury instructions.

> We have repeatedly discouraged the practice of borrowing language from the reasoning of written opinions. Isolated from its context, or sought to be translated from mere discussion into substantive law, it is apt to become invested with a quality wholly inappropriate for use in instructions. Unless clearly stated as legal principles, the unwisdom of construing them as such is here again emphasized.

*Id.* (citations omitted).

¶33. Absent the cases relied upon by the majority wherein similar jury instructions have been approved, today's contested instruction runs afoul of the cases discussed above. It is

16

flawed for the same reason that the properly refused instruction in *Knight* was flawed. Further, it intrudes on the common knowledge of the jurors as to the significance of the defendant's possession of a weapon.

> An instruction which is on the weight of the evidence or which singles out and gives undue prominence to certain portions of the evidence is erroneous. In the case of *Hood v. State*, *supra*, [170 Miss. 530, 155 So. 679 (1934)] the Court said: 'It is an established rule in this jurisdiction that although an instruction is correct as a legal proposition, it shall not single out for prominent presentation to the jury certain portions of the testimony, and, by thus drawing the special attention of the jury thereto, given an undue emphasis to the portions so specifically mentioned, unless the portions so singled out are so completely sufficient within themselves that the ultimate issue may be determined solely upon them, if found to be true.'
>
> The said instruction was particularly prejudicial to the appellant in giving undue emphasis and prominence to the sheriff's testimony as to the conclusions to be drawn from the physical facts. The vital issue in the case was whether the deceased did or did not have the crowbar at the time of the fatal difficulty.

*Mickell v. State*, 735 So. 2d 1031, 1034 (¶ 12) (Miss. 1999) (alterations in original) (citations omitted) (quoting *Bester v. State*, 212 Miss. 641, 55 So. 2d 379, 381 (1951)). The instruction singles out and gives prominence to the use of a deadly weapon, thereby drawing special attention and putting undue emphasis on it. Because the use or non-use of a deadly weapon by Gunn does not suffice to answer the ultimate issue of his guilt, the instruction was indeed improper unless saved by the cases cited by the majority.

    II.    **None of the cases cited by the majority or the State approve the contested jury instruction in the face of an argument that such an instruction constitutes an improper comment on the evidence.**

¶34. Again, the majority correctly identifies several cases wherein the Court concluded that deliberate design may be inferred from the use of a deadly weapon. Maj. Op. ¶ 17.

17

However, for the reasons given below, they all fall short of defeating Gunn's argument here that the instruction given in his case was an improper comment on the evidence.

¶35.    Most of the cases cited by the majority do not address the propriety of a jury instruction at all.  In *Holliman v. State*, 178 So. 3d 689, 698 (¶ 19) (Miss. 2015), the Court indeed wrote: "It is well-established that '[m]alice, or deliberate design, may be inferred from the use of a deadly weapon.'" *Id.* at 698 (¶ 19) (quoting *Anderson v. State*, 79 So. 3d 501, 507 (Miss. 2012)).  However, it did so in the context of deciding whether the trial judge erred by granting the defendant a judgment notwithstanding the verdict.  *Id.* at 697-98 (¶ 17).  In *Anderson*, the issue was whether a lesser-included offense instruction should be given.  *Anderson*, 79 So. 3d at 507 (¶ 24).  In *Carter v. State*, 722 So. 2d 1258, 1263 (¶ 19) (Miss. 1998), the issue was whether the verdict was against the overwhelming weight of the evidence.  In none of the above cases was the propriety of a jury instruction at issue.  Moreover, to draw a jury instruction such as the one contested here from their text runs afoul of the Court's admonition against turning "the reasoning or discussive portions of judicial opinions" into jury instructions."  *Knight*, 60 So. 2d at 640.

¶36.    The one case cited by the majority wherein the Court approved the giving of a similar jury instruction, *Williams v. State*, 111 So. 3d 620, 623 (¶ 8) (Miss. 2013), likewise does not address the argument made today by Gunn.  *Williams*, as well as the majority's discussion of it in relation to Gunn's arguments, Maj. Op. ¶¶ 17-19, addresses the argument that the use of the word *presume* improperly shifts the applicable burden of persuasion.  *Williams*, 111 So. 3d at 624-26 (¶¶ 12-20).  Nowhere in *Williams* did the Court address the argument raised

18

by Gunn today, *i.e.*, that the jury instruction singles out for the jury one part of the evidence—the use of a deadly weapon—and calls the jury to act on that evidence in a prescribed manner.

¶37.    Pursuant to the foregoing reasoning, *Williams* and the multiple cases the majority cites for the proposition that a jury may infer deliberate design from the use of a deadly weapon do not address, much less answer, the question raised by Gunn today.  That question is answered by the other cases he cites, and they show that the instruction was indeed an improper comment on the evidence and was improper.

## CONCLUSION

¶38.    The contested jury instruction improperly comments on the evidence, and is further flawed because it was drawn from the language of the court's prior opinions in a manner that violates the Court's long-standing admonition against doing so.  Accordingly, I dissent.

**KITCHENS AND KING, P.JJ., AND ISHEE, J., JOIN THIS OPINION.**

19