# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2025-KA-00288-SCT

*DEDERICO SCOTT WILSON a/k/a DEDERICO WILSON a/k/a DEDRICO WILSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/2025 |
| TRIAL JUDGE: | HON. JAMES D. BELL |
| TRIAL COURT ATTORNEYS: | ANDREW JAMES WILLIAMS |
| | JESSICA HEPT BAILEY |
| | TAMEIKA LADANYA BENNETT |
| | DESMOND DOUGLAS HOWARD, III |
| | SILAS E. MURRAY |
| | CHRISTOPHER SCOTT ROUTH |
| | KIMBERLY HARRISON-DAY |
| | DAVID FITZGERALD LINZEY |
| | ANDREKA HOLLINS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER N. AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/25/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**COLEMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On July 10, 2021, Dederico Scott Wilson shot and killed Jacobe Davis. A jury convicted him of first degree murder in the Hinds County Circuit Court. The trial court sentenced Wilson to serve a term of life imprisonment. Wilson now appeals his conviction,

arguing that the trial court improperly instructed the jury and that the prosecution presented insufficient evidence to support the verdict. There being no reversible error, we affirm Wilson's conviction and sentence.

## **FACTS**

¶2. Dederico Wilson and Jacobe Davis had a dispute about a shotgun and two hundred dollars. On the night of July 9, 2021, Davis showed up at Wilson's apartment complex with an assault rifle and a handgun. After confronting Wilson over the shotgun, Davis pointed the assault rifle at him. Wilson grabbed the barrel of the gun and redirected it away as Davis fired three shots.

¶3. An extended scuffle ensued, during which the two men fought over the guns while moving from the side of the apartment building up onto the landing outside Wilson's apartment door. The assault rifle ended up in Wilson's possession, and he shot Davis three times, first in the hip, then in the back, and finally in the back of his head. Following the first shot, unidentified individuals, presumably Davis's friends, fired shots from downstairs in the direction of Wilson.

¶4. The following morning, Wilson told his aunt Tashika Carter, with whom he shared the apartment, that some "guys had jumped on him the night before . . . and they pulled a gun on him."

¶5. That afternoon, officers with the Jackson Police Department responded to reports of a shooting at the apartment complex. Upon their arrival, the officers discovered Davis's body still lying on the balcony. The police also found multiple shell casings on the side of

2

the building, the balcony, and downstairs below the balcony. Bullet holes in the apartment's exterior walls and shot-out windows were identified. When searching the apartment, officers found an assault rifle and a handgun.

¶6.     Officer William Evans arrested Wilson and took him into custody. At the police station, Detectives Jacquelyn Thomas and Terrance Jackson interviewed Wilson. Wilson waived his *Miranda*[1] rights. The interrogation was recorded, and the video was played for the jury. In the interview, Wilson admitted he shot Davis, but his statement implied that he believed he acted in self defense. Twice during the interrogation, Wilson told Detectives Thomas and Jackson that he waited five minutes between each time he shot Davis. The relevant exchanges from the video recording are as follows:

> Thomas:     You say you shot four times
>
> Wilson:     Yeah.
>
> Thomas:     Ok so how many times? Did you shoot, then leave, or did you shoot 'em all at one time?
>
> Wilson:     I just shot 'em. I shot 'em one at a time.
>
> Thomas:     Ok.
>
> Wilson:     I'm talkin' 'bout pacin five minutes away from each other.
>
> Thomas:     Ok.
>
> Wilson:     He was still. He was still talkin' 'bout what he gone do to [unintelligible].
>
> Thomas:     Ok so you shot one shot, waited five minutes, and then shot another shot, wait another five minutes?

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

Wilson: Yeahhhh. And that's when everybody got to shootin' [unintelligible].

The interview continued:

Thomas: So let me ask you this. Earlier you told me that you shot him in the head first.

Wilson: No ma'am.

Thomas: I mean you shot him in the hip. I'm sorry. Shot him in the hip first. And then you waited five minutes.

Wilson: I ain't shoot him in the head. That's the last shot.

Thomas: That's the last shot you shot.

Wilson: Yeah

Thomas: So the first shot was in the hip.

Wilson: Yeah.

Thomas: And then you waited five minutes.

Wilson: Not the hip, the [points to side] right here.

Thomas: Yeah you said the side. Yeah right there. And then you said that you waited five minutes.

Wilson: Yuh huh.

Thomas: So did you go back in the apartment and came back out?

Wilson: No ma'am.

Thomas: You stayed outside.

Wilson: I stayed outside the whole time.

Thomas: Ok and then you said

4

| Wilson: | We—me and [unintelligible]—was like two feet away from each other on the balcony. |
|---|---|
| Thomas: | Ok. So then you say you waited five minutes and then you shot him the second time but you don't know where that shot went? |
| Wilson: | No I ain't know where that shot went. I seen when I shot him in the head then. |
| Thomas: | Ok. |
| Wilson: | I seen when I shot him in the side and the head at. |
| Thomas: | Ok. |

¶7.    At trial, the prosecution presented testimony from four witnesses. Officer Evans testified first and said that he responded to a call of a "shooting with intent" at the apartment complex. He found a deceased black male with gunshot wounds lying on the second-floor balcony. Officer Evans also took Wilson into custody as Wilson came out of the apartment. Although Officer Evans testified that Wilson was "acting hostile," he conceded on cross examination that his initial report stated he "took Mr. Wilson without incident." Officer Evans testified that Wilson told him he shot Davis and described how Davis initiated the incident by pulling the gun on him.

¶8.    Next, the State called Detective Thomas, who had served as the lead detective on the case and had helped process the scene. Detective Thomas testified that she interviewed Wilson after obtaining a signed *Miranda* waiver. Detective Thomas confirmed that Wilson admitted shooting Davis but claimed self defense. Detective Thomas also acknowledged checking a box on a victim compensation form indicating that the victim had approached the suspect with a gun.

¶9.     Detective Jackson testified as the third witness for the State. Detective Jackson assisted Detective Thomas at the scene and in interviewing Wilson. Detective Jackson testified that guns were found inside the apartment and that shell casings were found on the side of the building. Detective Jackson also stated that he recovered surveillance video on a jump drive, but the server crashed, and the video was lost.

¶10.    Finally, the State called Dr. Mark LeVaughn, a forensic pathologist with the State Medical Examiner's Office. Dr. LeVaughn testified that he reviewed the autopsy report and concluded the cause of death was multiple gunshot wounds. Dr. LeVaughn explained that two of the three gunshots were "from back to front" and that all three wounds were distant shots, meaning the gun was fired from at least four feet away.

¶11.    The defense then called Tashika Carter as its sole witness. Carter testified that she saw Wilson and Davis fighting over a gun on the balcony. Carter told the jury she heard Davis instructing another armed man in the parking lot to shoot Wilson. Carter further testified that the entire incident from the first gunshot to the last gunshot lasted less than two minutes. After Carter's testimony, the defense rested.

¶12.    The trial court granted State's Instruction S-9[2] over defense counsel's objection. It read:

> The Court instructs the jury that one who claims self-defense as a defense to his actions may not use excessive force to repel the attack but may use only such force as is reasonably necessary under the circumstances. If you find from the evidence, beyond a reasonable doubt that the defendant, Dederico Wilson, used more force than was reasonably necessary under the

---

[2]The transcript refers to the instruction labeled S-9 in the courts papers as S-11. It refers to the instruction labeled S-7 in the court papers as S-9.

circumstances, then the defendant may not use self-defense as a defense to his actions.

State's Instruction S-7 was also granted over objection. It read:

If a death is inflicted upon a person with a deadly weapon in a manner calculated to destroy life or inflict great bodily harm, then malice or the intent to kill may be inferred from the use of the weapon.

¶13. After deliberation, the jury returned a verdict finding Wilson guilty of first degree murder. The trial court sentenced Wilson to life imprisonment.

¶14. Wilson appeals and raises three issues:

I. The trial court erred by instructing the jury that Wilson may not claim self defense if he used excessive force to repel the attack.

II. The trial court erred by instructing the jury that malice may be inferred from the use of a deadly weapon.

III. The evidence was insufficient to support the verdict.

**STANDARD OF REVIEW**

¶15. "Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion." *Watkins v. State*, 101 So. 3d 628, 633 (¶ 16) (Miss. 2012) (internal quotation marks omitted) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (Miss. 2012)). A "trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case." *Young v. State*, 891 So. 2d 813, 819 (¶ 16) (Miss. 2005) (quoting *Howell v. State*, 860 So. 2d 704, 761 (Miss. 2003)).

¶16. "A defendant's failure to object to a jury instruction at trial creates a procedural bar that prohibits appellate review of the issue, unless there is plain error." *Fitzpatrick v. State*,

7

175 So. 3d 515, 522 (¶ 31) (Miss. 2015) (citing *Berry v. State*, 728 So. 2d 568, 571 (Miss. 1999)). "Under such circumstances, this Court will find plain error only where a fundamental right of the defendant has been violated." *Id.* (citing *Berry*, 728 So. 2d at 571); *Heidelberg v. State*, 976 So. 2d 948, 949 (Miss. Ct. App. 2007)).

¶17. Claims of insufficient evidence are reviewed de novo. *Brooks v. State*, 203 So. 3d 1134, 1137 (¶ 11) (Miss. 2016) (citing *Kirk v. State*, 160 So. 3d 685, 695 (Miss. 2015)). "When reviewing challenges to the sufficiency of the evidence, we view all evidence in the light most favorable to the State." *Thomas v. State*, 277 So. 3d 532, 535 (¶ 11) (Miss. 2019) (citing *Cotton v. State*, 144 So. 3d 137, 142 (Miss. 2014)). The Court will only reverse if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation mark omitted) (quoting *Cotton*, 144 So. 3d at 142).

## ANALYSIS

*Issue I: Jury Instruction S-9*

¶18. On appeal, Wilson challenges Instruction S-9, arguing that the language placed a higher burden on the defense and improperly cut off the right to claim self-defense. However, at trial, Wilson objected solely on the ground that the instruction was duplicative of other submissions. The objection, in its entirety, was stated as follows:

> Your Honor, I'm going to object. It is duplicitous to both S-10 and, again, D-10, which I know the Court has still not ruled on yet. This is pulling and singling out that if someone claims self-defense, you know, that it must be reasonable under the circumstances. That is already covered in S-10 and in D-10 that's submitted. So this is now just drawing out and highlighting one aspect of that, which there's no need for this instruction.

8

¶19. Under well-established precedent, asserting a different ground on appeal than the one raised at trial creates a procedural bar. "We have repeatedly pointed out that objections to instructions in the trial court must be specific so the trial judge has the opportunity to rule on the particular grounds relied on." *Collins v. State*, 368 So. 2d 212, 212 (Miss. 1979).

¶20. Procedural bar aside, the instruction correctly states Mississippi law. Wilson contends the language improperly shifts the focus to the degree of force used rather than the reasonableness of the grounds for using the force. However, both the degree of the force used and the reasonableness of its use are proper considerations for the jury. Additionally, the State correctly points out that the recent Court of Appeals decision *Whiddon v. State*, 398 So. 3d 896, 918 (¶ 77) (Miss. Ct. App. 2024), *cert. denied*, 398 So. 3d 872 (Miss. 2025), upheld an identical instruction. Mississippi law firmly establishes that a person claiming self-defense may only use force that is reasonably necessary under the circumstances. *Hall v. State*, 644 So. 2d 1223, 1229-30 (Miss. 1994) (citing *Ferguson v. State*, 242 So. 2d 448, 450 (Miss. 1970)). Instructing the jury on the prohibition of excessive force does not eliminate a valid self-defense claim; rather, such instruction merely provides the proper legal framework for evaluating the reasonableness of the defendant's actions. The trial court did not abuse its discretion by allowing Instruction S-9.

*Issue II: Jury Instruction S-7*

¶21. Wilson next challenges Instruction S-7, asserting the language impermissibly commented on the weight of the evidence. The contested instruction read:

> If a death is inflicted upon a person with a deadly weapon in a manner calculated to destroy life or inflict great bodily harm, then malice or the intent to kill may be inferred from the use of the weapon.

Wilson argues that instructing a jury that malice may be inferred from the use of a deadly weapon is inappropriate when the circumstances of the killing are fully explained by witnesses because it becomes an improper comment on the weight of the evidence. Further, he challenges the settled Court precedent holding that the use of *infer* rather than *presume* distinguishes proper versus improper instructions on the issue. *Williams v. State*, 111 So. 3d 620, 625 (¶ 17) (Miss. 2013).

¶22. The discussion in *Williams*—and the dictionary definitions of the relevant terms—remains just as true and pertinent to the issue sub judice today as it was then.

> Rather, we consider the distinctive differences between "infer" and "presume." "Infer" is defined as "to conclude from certain premises or evidence." Webster's II *New College Dictionary* 567 (2001). By this definition, a jury may not make an inference without evidence adduced at trial to support that inference. However, S–4 did not employ "infer," but instead used "presume," which is defined as "to assume to be true without proof to the contrary." Webster's II *New College Dictionary* 875 (2001). "Assume" is analogous to "presume" and "stress[es] the arbitrary acceptance as true of something which has not yet been proved." Webster's *Dictionary of Synonyms* 646 (1942). As a presumption is accepted as true without proof to the contrary, it follows that the burden was shifted to the defendant to provide proof.

*Williams*, 111 So. 3d at 625 (¶ 17). The distinction matters and, contrary to Wilson's assertion, is ascertainable by lay jurors.

¶23. Ultimately, the Court has affirmed the exact words of Instruction S-7 repeatedly and recently. *Watts v. State*, 402 So. 3d 744, 752 (¶ 36) (Miss. 2025); *Holliman v. State*, 178 So. 3d 689, 698 (¶ 25) (Miss. 2015); *Anderson v. State*, 79 So. 3d 501, 507 (¶ 24) (Miss.

10

2012); ***Carter v. State***, 722 So. 2d 1258, 1263 (¶ 18) (Miss. 1998). In ***Watts***, Watts objected to an identical instruction on identical grounds. ***Watts***, 402 So. 3d at 751 (¶ 31). The majority held "this Court has repeatedly upheld instructions nearly identical to the instruction that Watts contends commented on the weight of the evidence. Watts's contention, therefore, lacks merit." ***Id.*** at 752 (¶ 36). Wilson's contention also lacks merit, and the trial court did not abuse its discretion by granting the instruction.

*Issue III: Sufficiency of the Evidence*

¶24. Finally, Wilson argues the prosecution failed to present sufficient evidence "to prove beyond a reasonable doubt that Wilson acted with deliberate design and not in self defense or imperfect self defense to prove deliberate design murder." The Court reviews sufficiency challenges de novo, viewing all evidence in the light most favorable to the prosecution. ***Brooks***, 203 So. 3d at 1137 (¶ 11) (first citing ***Kirk***, 160 So. 3d at 695; then quoting ***Warren v. State***, 187 So. 3d 616, 627 (Miss. 2016)); ***Thomas***, 277 So. 3d at 535 (citing ***Cotton***, 144 So. 3d at 142). Reversal is warranted only if no rational juror could have found the essential elements of the crime beyond a reasonable doubt. ***Id.*** (quoting ***Warren***, 187 So. 3d at 627).

¶25. The record contains ample evidence to support the jury's verdict. By Wilson's own admission during the police interview, approximately five minutes elapsed between each shot. Wilson shot an unarmed Davis in the hip, waited, shot him in the back, waited again, and delivered a fatal shot to the back of the head. While the victim may have initiated the physical confrontation, Wilson successfully disarmed the victim and gained control of the situation. Wilson claims he shot the victim the final time because the victim was "still

talking." Viewed in the light most favorable to the prosecution, a rational jury could easily conclude that the delayed, subsequent shots were calculated acts of deliberate design murder rather than acts of necessary self-defense or imperfect self-defense. The jury heard the conflicting testimonies and was thus properly presented with the factual determination of self defense. *Griffin v. State*, 495 So. 2d 1352, 1353 (Miss. 1986) ("There was conflicting testimony, and the question of self-defense was presented fairly to the jury as finder of fact.") The Court declines to disturb the jury's verdict.

## CONCLUSION

¶26. The trial court did not abuse its discretion, and the jury's verdict was supported by sufficient evidence; therefore, Wilson's conviction and sentence are affirmed.

¶27. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**